DECISION
This matter is before this Court on appeal from two separate decisions of the Portsmouth Zoning Board of Review. One appeal is from the Board's decision at an August 31, 1995 meeting upholding the action of the town's building inspector, who denied the issuance of residential building permits in a heavy industrial district. The other appeal is from a September 15, 1995 decision of the Board denying the plaintiffs' application for a Special Use Permit to allow residential homes in a heavy industrial district. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
Facts/Travel
P.Y. Small Boats, Inc. is the owner of a parcel of real estate located in Portsmouth, Rhode Island, specifically referred to as Lot 37 on Portsmouth Tax Assessor's Map 16. The parcel is zoned as a heavy industrial district in the Portsmouth Zoning Ordinance. See Article III, III-6 of the Portsmouth Zoning Ordinance. According to the Ordinance, industrial districts are established to encourage intensive industrial and business activities, with safeguards for protecting nearby residential areas and environmentally sensitive areas. See
Article III, III — 2 of the Portsmouth Zoning Ordinance. Heavy industrial districts specifically provide for levels of noise, vibration, smoke, odor and other evidence of industrial activity commensurate with State and Federal Standards and other performance standards that may be set by the Town. Id. Article V of the Ordinance sets forth that residential dwellings are a permitted use in a heavy industrial district subject to the granting of a special use permit from the Zoning Board of Review.See Article V, § A. 1 of the Portsmouth Zoning Ordinance.
Reilly Lamson, a licensed contractor in Rhode Island, has the property under a purchase and sale contract that is conditioned upon his ability to build single family homes on the parcel. (8/31/95 Record) Accordingly, Reilly Lamson and P.Y. Small Boats, Inc., (appellants) requested a building permit for a single-family dwelling on Lot 37 of Portsmouth Tax Assessor Map 16. A letter dated July 25, 1995 from George Medeiros, the alternate building official in the town of Portsmouth, denied the request for a building permit based upon the fact that the lot in question is located in a heavy industrial district, and Article V, Section A. 1 of the Ordinance does not allow a family residence as a matter of right. See July 25, 1995 letter of George Medeiros to Cort B. Chappell, Plaintiff's Memorandum Appendix 1. The plaintiffs appealed the decision of the building official to the Portsmouth Board of Review. At the same time, the plaintiffs also submitted an application for a special use permit to build residential homes in a heavy industrial district. See
Reilly Lamson's Petition for a Special Exception, Plaintiff's Memorandum, Appendix 2.
After proper notice and advertisement, hearings were held on August 31, 1995, and September 15, 1995. Before voting on the appeal of the building officials' denial of the plaintiffs' application for a building permit, the Board heard from Peter Merritt, a real estate expert appearing on behalf of the applicant, who stated the proposal would not cause any public health or safety issues. (8/31/95 Record) Peter McGinn, an attorney representing Newport Electric, objected to the proposal and stated the proposal would split the prime industrial land in two. (8/31/95 Record) Mildred Kane, another objector, stated to the Board that she was concerned with the electric company's heavy wires next to the proposed residences. (8/31/95 Record) She also agreed that the proposed houses would split the heavy industrial area and should be left as open space for industrial use. (8/31/95 Record) The Board also heard from Glen Russell, another objector to the proposal. Blake Henderson, a registered professional engineer appearing on behalf of the applicant, testified that the proposed development of houses would not create any runoff problems or increase problems on West Shore Road. (Id.)
On August 31, 1995, the Board voted to uphold the decision of the building official denying the request for a building permit. In its written decision of October 3, 1995, the Board explained that it had concurred with the Building Inspector's application of the Ordinance. See 10/3/95 Decision of the Zoning Board of Review. Appellants filed a timely appeal to this Court asserting that the Board erred in applying the special use permit standard of the Portsmouth Zoning Ordinance as opposed to the limited standard provided in G.L. 1956 45-24-37.
After upholding the building official's denial of a building permit, the Board considered the plaintiffs' application for a special use permit to build residential homes in a heavy industrial district. The Board again heard from several witnesses who appeared on behalf of the applicants, as well as several objectors. Reilly Lamson explained to the Board that the minimum floor area of the proposed houses would be 1,500 square feet, while the lot sizes would be 40,000 square feet. (8/31/95 Record) He also testified that PY Small Boats Inc., would hold title to the lots until construction is complete and the proposed homes all sold. Id. Blake Henderson, an engineering expert, told the Board that an environmental assessment had been performed and the parcel in question was determined to be suitable for public use. He also stated it was his opinion that the proposal would not create any public health or safety concerns. Id. Mr. Henderson additionally stated that he was familiar with the Comprehensive Community Plan that noted heavy industrial areas generally have deep water ports and railway and highway access; however, he pointed out that the proposed property, although zoned for heavy industry, has none of these. Id.
In addition, Peter Merritt also testified concerning the application for a special use permit. It was his opinion that the proposal would not be detrimental to the area in question because the area is a marginal industrial site due to the lack of access to a railroad and deep water port. Id. He also testified that nothing in the proposal would adversely impact the health, safety, or welfare of the community. (8/31/95 Record) The Board also heard from Mildred Kane and Byron Hall who objected to the application. Id.
Additionally, Russell J. Nelson, the Maps and Record Supervisor for Newport Electric, an objector to the application, testified concerning the property that Newport Electric owned in the same area of the proposed development (9/15/95 Record) He also noted that Mantaup Electric owned a 32-acre parcel in the area. Id. It was his opinion that it would be better for future use if the proposed property remained a heavy industrial district without the special use permits for residential housing. Id.
On September 15, 1995, the Board denied the applicants' request for a special use permit. A written decision, issued on October 3, 1995, made findings that the proposal would not be compatible with neighboring land uses and would not be in conformity with the comprehensive community plan. Furthermore, the Board found that the proposal would divide the heavy industrial area in two. Appellants filed a timely appeal to this court, contending that the Board abused its discretion and committed an error of law when it denied the appellants' application for a special use permit.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69 (D), which provides:
 "45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co. Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou, 120 R.I. at 507, 388 A.2d at 824-25). On review, the Supreme Court examines the record to determine whether "competent evidence" supports the Superior Court judge's decision. R.J.E.P. Associates v. Hellewell, 560 A.2d 353, 354 (R.I. 1989).
Denial of Building Permits
The appellants assert that the Portsmouth Zoning Board of Review made an error of law by upholding the building official's decision that a special use permit was required for the construction of a family residence in a heavy industrial district despite the language of R.I.G.L. 1956 § 45-24-37, which states:
 "(1) The zoning ordinance shall provide a listing of all land uses and/or performance standards for uses which shall be permitted within the zoning use districts of the municipality.
 (2) Notwithstanding any other provision of this chapter, the following uses shall be permitted uses within all residential zoning use districts of a municipality and all industrial and commercial zoning use districts except where residential use is prohibited for public health or safety reasons:
 (a) Households;"
The appellants argue that the language of R.I.G.L. § 45-24-37
allows households as a matter of right in a heavy industrial district, and that the Portsmouth Zoning Ordinance could not regulate the placement of homes unless it could be demonstrated that the residential use created public health or safety concerns. The appellants contend that since the Portsmouth Zoning Ordinance only allows households by special use permit in an industrial zone as opposed to as a matter of right, only subject to regulation for public health and safety reasons, the Ordinance did not conform with the Rhode Island General Laws.
It is well-established that the Legislature should never be presumed to enact laws that lead to absurd or unreasonable results. Tremblay v. City of Central Falls, 480 A.2d 1359 (R.I. 1984). In addition, it is clear that the Portsmouth Zoning Ordinance does not prohibit residential homes in a heavy industrial district; it merely provides that an applicant must seek a special use permit. The purpose of a special use permit is to establish within the ordinance "conditionally permitted" uses. The fact that a particular use is allowed in a zoning district means that the municipality has already determined that it may be an appropriate use for the district. Id. As such, it cannot be excluded by a decision of the zoning board unless the standards for such special use permit are not satisfied with respect to its establishment at a particular site or location.Perron v. Zoning Board of Review of Burrillville, 117 R.I. 571, 369 A.2d 6638 (1977). Thus, after reviewing the law, it is clear that the Portsmouth Zoning Board did not commit an error by upholding the decision of the town's building official.
The Special Use Permit
In order for a zoning board to grant a special use permit, there must be a specific provision in the local ordinance that allows for the proposed use by special permit. The rules and regulations that govern the exercise of the board's authority to award the special use permit are also enumerated in the local ordinance. The board must consider the criteria set forth in the ordinance in order to properly grant a special use permit. SeeGuiberson v. Roman Catholic Bishop of Providence, 112 R.I. 252, 308 A.2d 628 (1973). Where the conditions and requirements are satisfied, it is an abuse of discretion to deny the requested special use permit. See Salve Regina College v. Zoning Board ofReview of Newport, 594 A.2d 878 (R.I. 1991).
As noted above, the Portsmouth Zoning Ordinance specifically allows family dwellings in a heavy industrial district subject to the granting of a special use permit. See Article V, § A. 1 of the Portsmouth Zoning Ordinance. The criteria for special use permits are as follows:
 a) The desired use will not be detrimental to the surrounding area;
 b) It will be compatible with neighboring land uses.
 c) It will not create a nuisance or a hazard in the neighborhood.
 d) Adequate protection is afforded to the surrounding property by the use of open space and planting;
 e) Safe vehicular access and adequate parking are provided;
 f) Control of noise, smoke, odors, lighting and any other objectionable feature is provided;
 g) Solar rights of the abutters is provided for;
 h) The proposed special use will be in conformance with the purposes and intent of the comprehensive plan and the zoning ordinance of the Town of Portsmouth; and
 i) The health, safety, and welfare of the community is protected.
The appellants contend that the Portsmouth Zoning Board abused its discretion and committed an error of law when it denied appellants' request for a special use permit. Specifically, the appellants assert that since the denial of the special use permit was based upon the Portsmouth Comprehensive Community Plan calling for "exclusionary zoning," the decision is in direct contradiction of R.I.G.L. § 45-24-27, which allows for residential dwellings in all zoning districts.
A review of the record reveals that the Board did deny the application for a special use permit based upon its lack of conformance with the purposes and intent of the comprehensive plan. (9/15/95 Record) Specifically, the members stated that the proposal would divide the heavy industrial zone in two. Id. According to the comprehensive plan, residential dwellings are not compatible with industrial zones. See
Appellee's Appendix C. Furthermore, industry does not want to locate in residential areas due to incompatibility; thus, the best way to minimize incompatibility problems is to minimize the possibility in the first place. Id. Exclusionary zoning means that the land is reserved only for targeted and acceptably compatible uses. Id. The general laws provide that a town's comprehensive plan is a statement (in text, maps, illustrations, or other media of communication) that is designed to provide a basis for rational decision making regarding the long-term, physical development of the municipality. See G.L. 1956 § 45-22.2-C. Furthermore, each city and town must conform its zoning ordinance and zoning map to be consistent with its comprehensive plan. See G.L. 1956 §45-24-29 (b)(2). The Rhode Island Supreme Court has recently held that where an existing zoning ordinance did not conform to a town's comprehensive plan, the decision of the zoning board of review to approve an application for a special exception to build low income housing was fully justified. Curran, et al. v. ChurchCommunity Housing Corporation, et al., 672 A.2d 453, 455 (R.I. 1996). Accordingly, the decision of the Board to deny the appellant's application for a special use permit to build residential homes in a heavy industrial district was not an abuse of discretion or an error of law.
After reviewing the entire record, this Court finds that there is substantial, reliable and probative evidence of record supporting both of the Board's decisions. Thus, the August 31, 1995 and the September 15, 1995 decisions of the Portsmouth Zoning Board of Review are hereby affirmed.
Counsel shall submit the appropriate order for entry.