DECISION
Before this court is an appeal from a March 12, 1997 decision of the City of Cranston Zoning Board of Review (zoning board) denying an application of Alan J. Shuman and Eric J. Shuman (Shumans) for a use variance. Jurisdiction is pursuant to G.L. § 45-24-69.
Facts and Travel
The essential facts giving rise to this dispute are as follows. The Shumans are the owners of certain real property located at 36 North Clarendon Street in Cranston, Rhode Island, which parcel is described as Assessor's Plot 3, Lot 365. The property lies in a B/1 Residential One-Two Family zone and has been taxed as a three unit dwelling since 1963.
On January 21, 1997, the Shumans submitted to the zoning board an "Application for Exception or Variation Under the Zoning Ordinance." In the application, they explained that they "have a legal 3 family dwelling, and seek variance for fourth unit. Predecessors-in-title constructed small `in-law' apartment on first floor without permit. Applicants seek variance due to hardship from existing characteristics of building, insofar as use will not alter character of area."
On March 12, 1997, the zoning board held a properly advertised public hearing on the Shumans' application. The Shumans called four witnesses; a real estate expert who testified to the appropriateness of the variance and three neighbors who were familiar with the existence of the fourth apartment and expressed no objection to the variance. The zoning board unanimously denied the requested relief.
The Shumans filed timely an appeal to this court on March 28, 1997.[1] In their papers submitted to the court, the Shumans argue that "they have met each and every standard set forth in the [Cranston zoning] ordinance, having done so without even a scintilla of evidence in rebuttal." Consequently, they submit that the actions of the zoning board in denying the requested variance have prejudiced their substantial rights to the use of the property and, as such, were in violation of the Cranston zoning ordinance; were clearly erroneous in light of the unrebutted facts in the record; were arbitrary, capricious, or characterized by an abuse of discretion or clearly unwarranted exercise of discretion; or were affected by error of law.
Alternatively, the zoning board argues that the reasons given for denial of the variance correspond to the applicable statutory scheme, that the zoning board employed the correct standard of review in assessing the Shumans' application, and that the Shumans "failed to present competent, probative evidence to the satisfaction of those standards."
Standard of Review
This court's review of the zoning board's decision is governed by § 45-24-69(D) which provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 "(1) In violation of constitutional, statutory, or ordinance provisions;
 "(2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law;
 "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The court "`must examine the entire record to determine whether `substantial' evidence exists to support the board's findings.'" Salve Regina College v. Zoning Board of Review of theCity of Newport, 594 A.2d 878, 880 (R.I. 1991). Substantial evidence denotes "more than a scintilla but less than a preponderance * * * It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion * * * It means more than merely `some' or `any' evidence and more than a scintilla of evidence." Apostolou v. Genovesi,120 R.I. 501, 508, 388 A.2d 821, 824-25 (1978). If substantial evidence exists to support the zoning board's decision, this court is required to uphold the zoning board's conclusions unless they rest on any of the six criteria above. Id. at 825.
The Shumans' Application
Section 45-24-31(61)(a) of the Rhode Island General Laws defines a use variance as "[p]ermission to depart from the use requirements of a zoning ordinance where the applicant for the requested variance has shown by evidence upon the record that the subject land or structure cannot yield any beneficial use if it is to conform to the provisions of the zoning ordinance." (Emphasis added.) The requirements for a use variance in the instant case are set forth in the Cranston zoning ordinance and they mirror those contained in § 45-24-41. Section 45-24-41
in pertinent part, provides:
 "(C) In granting a variance, the zoning board of review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 "(1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting hereto those physical disabilities addressed in § 45-24-30(16) herein;
 "(2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
 "(3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 "(4) That the relief to be granted is the least relief necessary.
 "(D) The zoning board of review shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that: (1) in granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the zoning ordinance."
At the March 12, 1997 hearing on the use variance application, the Shumans called Joseph W. Accetta, a real estate expert, to testify. Accetta stated that he evaluated both the interior and exterior of the property and to; reasonable degree of professional certainty concluded that "a four-unit is a reasonable use in the neighborhood * * * [and] is in harmony with the area." In response to a question concerning whether any beneficial use of the fourth apartment would result from the denial of the variance, Accetta stated to a reasonable degree of professional certainty that "the only use it would be would be for storage." The Shumans also called three neighbors, each of whom expressed no objection to the fourth apartment.
In its decision denying the Shumans' variance, the zoning board determined that there were no four-unit dwellings in the area and, although there were "a few" two-family dwellings, the neighborhood was "predominately single family." The zoning board also found that the proposed parking plan was insufficient for four units and that the lot would have to be extended ten more feet to accommodate the necessary parking spaces. These facts led the zoning board to conclude that the application should be denied for the following reasons:
 "1. Severe overcrowding.
 2. The application is out of character with the surrounding neighborhood; and
 3. No hardship; the applicant is making reasonable use of his property with a 3 family dwelling on a 12,000 sq. ft. lot."
There is substantial evidence in the record to indicate that the existence of a four-unit dwelling would alter the general character of the surrounding area since no other dwelling in the neighborhood contained four units and the variance, if granted, would cause severe overcrowding with respect to parking.
The Shumans also argue that denial of the variance would prevent any beneficial use of the fourth apartment. However, it is well settled that "unnecessary hardship exists when literal application of the zoning ordinance completely deprives an owner of all beneficial use of his [or her] property." Almeida v.Zoning Board of Review of the Town of Tiverton, 606 A.2d 1318, 1320 (R.I. 1992). (Emphasis added.) In the instant case, Eric Shuman testified that the three legal units on the premises are currently being leased. The denial of the variance would not affect the use of these three units and, as such, the Shumans have failed to prove that they are being deprived of all
beneficial use of the property. Id. at 1321. ("The petitioner bears the burden of proving by probative evidence that being restricted to the permitted uses within the zoning ordinance will deprive her of all beneficial use of her property.") Thus, there exists substantial evidence in the record to support the zoning board's conclusion that denial of the variance would result in no undue hardship to the Shumans since the property may still yield a beneficial use without the variance.
After review of the entire record, the court is satisfied that substantial evidence exists to support the zoning board's denial of the requested use variance since the Shumans' application fails to comply with the provisions of § 45-24-41
or the Cranston zoning ordinance. Accordingly, the Shumans' appeal is denied, and the March 12, 1997 decision of the zoning board is affirmed.
Counsel shall prepare the appropriate order for entry of judgment.
[1] On April 24, 1997, the parties stipulated to a briefing schedule whereby the zoning board would file its brief on or before June 16, 1997. On June 26, 1997, the Shumans filed a motion for entry of judgment by default for the zoning board's failure to timely file an appellate brief. The zoning board objected to the Shumans' motion and claimed that it filed a brief on June 25, 1997. The record reflects the actual date of filing as June 27, 1997. Nevertheless, the matter came before Justice Gagnon on July 9, 1997, and the motion was passed.