DECISION
This matter is before the Court for decision on Mildred I. Perugini's ("Plaintiff") appeal of the Zoning Board of Review of the City of Newport's ("Board") grant of a dimensional special use permit to John and Elizabeth Nutt ("Defendants") for the construction of a bedroom/bathroom addition.
 Facts and Travel
On January 9, 2006, the Board unanimously approved Defendants' application for a dimensional special use permit to construct an addition to their dwelling. The purpose of the proposed addition is to provide 340 square feet of living space for Elizabeth Nutt's 93 year-old mother who presently maintains her own home in Middletown, Rhode Island. Plaintiff, a neighbor of Defendants, contends that the members of the Board, in assessing the appropriateness of the application, focused only on the "personal convenience of Mrs. Nutt's mother" rather than evidence, or lack thereof, of the addition's conformance to relevant criteria. See Pl.'s Memo at 10. More specifically, she maintains that "[t]he document purporting to be the written decision of the zoning board is an after the fact fabrication of reasons that the zoning board members never considered or articulated when they voted to grant the Nutts' petition." Id. at 11. Thus, according to Plaintiff, the Board's written decision is a "nullity." Plaintiff also argues that even if the Board's decision is not determined to be a "nullity," there is a lack of competent evidence in the record to support the findings by the Board that the proposed addition is "in harmony" with the neighborhood or complies with the city's comprehensive plan.
 Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d). Section 45-24-69(d), in relevant part, states:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Pursuant to § 45-24-69(d), issues of credibility and the weight of the evidence are within the purview of the zoning board and will not be disturbed by the Superior Court on review. Kaveny v. Zoning Bd. ofReview, 875 A.2d 1, 7 (R.I. 2005). This Court is limited to an examination of the entire record to determine whether the board's findings of fact are supported by substantial evidence. Mill RealtyAssocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004). "Substantial evidence has been defined `as more than a scintilla but less than a preponderance.'" Id. (quoting Apostolou v. Genovesi, 120 R.I. 501, 508,388 A.2d 821, 824 (1978)). Thus, if relevant, competent evidence that a reasonable person might accept in support of a conclusion exists, then the decision of the zoning board must be affirmed. Id.
 Analysis
As the rule and cited principles mandate, this Court must examine the record of the January 9, 2006 hearing to determine if there is a sufficient amount of evidence to support the Board's approval of Defendants' petition for a special use permit. At the outset of the hearing, the application for the special use permit was identified as a request to change an existing non-conforming structure by constructing a single-story seventeen-by-twenty foot (17' X 20') bedroom/bathroom addition which would increase Defendants' lot coverage from twenty-nine percent to thirty-five percent.[1] Plaintiff, the sole objector to Defendants' application, testified that the proposal would cause her to "lose the valuation of . . . [her] property, the esthetics [sic] of it." (1/9/06 Tr. 24). She further opined that the addition "would block the air flow coming through." Id. Plaintiff also claimed that the plan would have "an adverse impact" on her property and that she "wouldn't have any view. . . ." Id. at 26. Plaintiff, however, presented no evidence and her attorney simply urged the Board to accept her unsupported conclusions.
As a preliminary matter, the Court declines to rule that Board's decision filed on July 26, 2006 is a nullity. It is a replica of the decision filed by the Board on February 23, 2006 which accurately reflected the Board's findings of fact, as well as the Board's ruling that the Defendants' proposal: (1) was in harmony with the surrounding area; (2) would not have an adverse impact on the surrounding area; and (3) was in conformance with the city's comprehensive master plan. Plaintiff, in her memorandum, contends that "[n]ot a single zoning board member considered on the record the relevant criteria in Section 17.22.030 of the Zoning Code, including the compatibility of the expansion of the already nonconforming structure with the surrounding area and the consistency with Newport's comprehensive plan." See Pl.'sMemo at 8 (emphasis in original).
Section 17.22.030 of the Newport Code of Ordinances requires an applicant seeking to alter, change, enlarge, or add to a structure which is nonconforming by dimension to seek a special use permit. Section 17.108.020, in relevant part, states:
 "G. Special use permits shall be granted only where the zoning board of review finds that the proposed use or the proposed extension or alteration of an existing use is in accord with the public convenience and welfare, after taking into account, where appropriate:
 1. The nature of the proposed site, including its size and shape and the proposed size, shape and arrangement of the structure;
 2. The resulting traffic patterns and adequacy of proposed off-street parking and loading;
 3. The nature of the surrounding area and the extent to which the proposed use or feature will be in harmony with the surrounding area;
 4. The proximity of dwelling, churches, schools, public buildings and other places of public gathering;
 5. The fire hazard resulting from the nature of the proposed buildings and uses and the proximity of existing buildings and uses;
 6. All standards contained in this zoning code;
 7. The comprehensive plan for the city."
The record of the hearing in question clearly reveals that the Board members considered and discussed the relevant criteria before reaching their unanimous decision.
Board member Martin L. Cohen actually had inspected the Defendants' property before the hearing and retained notes from his on-site visit. At the hearing, Mr. Cohen raised the issue of the applicant's failure to include a woodshed in their lot coverage calculation. (1/9/06 Tr. 5-6). John Nutt acknowledged this inadvertence and offered to remove the structure. Id. at 6-7. Indeed, removal of the woodshed was a condition of the granting of the permit. See Decision at 2.
Additionally, Chairman Peter J. O'Connell noted during the hearing that the staff report indicated that the proposed use would be "in harmony with the surrounding area." (1/9/06 Tr. 11). He properly observed that the construction of "an additional dwelling unit" was not being proposed, but "simply a [sic] living quarters for a person, adding a bedroom and bathroom." Id. After questioning John Nutt, Chairman O'Connell characterized the proposal as a "Cape addition . . . but a little bit lower . . . so it gives an architectural effect. . . ."Id. at 12. These comments are fully supported by the photographic evidence submitted at the hearing. (See Color Photographs entitled"Standing on Whitwell Avenue Looking Towards Perugini House" "Perugini's House Towering Over Nutt House"). Chairman O'Connell also verified, after discussion, that Plaintiffs could provide four off-street, non-public parking spaces. (1/9/06 Tr. 15-16).
After Defendants were questioned extensively and Plaintiff's objections were heard, the Board members stated their reasons for granting Defendant's petition. Board member Rebecca McSweeney commented on Defendants' proposal as follows:
 "I do think that because the land, the piece of land that's so small, and the house, any addition would certainly add a significant percentage to the lot coverage, and the fact that it is a bedroom, sitting room combination, all three in one area, with handicapped access, that I would be inclined to grant the petition. I think, particularly, the handicapped access makes it necessary that it be slightly larger than what it otherwise might have to be."
(1/9/06 Tr. 39). Board member Michael Martin supported Defendants' application because "it's a minimum variance. . . ." Id. Board member Cohen expressed that he was "somewhat troubled by some aspects" of Defendants' petition. Id. at 40. More specifically, he noted that he had "trouble with the fact that the neighbor [Plaintiff] . . . has such [a] substantial objection. . . ." Id. Despite his concerns, Mr. Cohen voted in the affirmative, remarking that "providing for an elderly family member is quite important[,] [a]nd the space being provided is . . . certainly within reason." Id.
Chairman O'Connell concluded the hearing by expressing his belief that the addition was a "minimum request." Id. at 41. He added:
 "[t]he square footage isn't the problem to me. I think what it is, obviously, lower than the roofline I know the objector's house, seeing pictures and angles, is higher. Yes, there will be a visual impact there. I suppose there will be some air trouble. But I do think they can live in harmony with each other. I do not think they are mutually exclusively [sic] of each other. I think the addition is appropriate as the need is required, and it's also appropriate to minimize the adverse conditions in the neighborhood. Where it's being located . . .[,] [i]t's something I think is appropriate."
Id. at 41-42.
A review of the record convinces this Court that the evidence presented unequivocally supported the findings and decision of the Board. The Court specifically finds that Defendants presented an amount of evidence is excess of the applicable standard, i.e. more than a scintilla but less than a preponderance that a reasonable person might accept in support of a conclusion. See Mill Realty Assocs.,841 A.2d at 672. Therefore, the Court affirms the Board's January 9, 2006 decision, enters judgment for Defendants John and Elizabeth Nutt, and dismisses Plaintiff's appeal. Counsel for Defendants shall prepare an order in conformance with this decision.
[1] Defendants' lot is located in a R-10 zoning district. It status as non-conforming is attributed to the facts that the lot comprises of only 5570 square feet, where 10,000 square feet is required, and that the existing dwelling structure covers 1610 square feet, or 29% of the lot, where only 20% is permitted.